**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4208-15T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

CHARLES H. HOENS, III,

    Defendant-Appellant.

_____

Argued April 24, 2017 — Decided  May 4, 2017

Before Judges Sabatino, Currier and Geiger.

On appeal from Superior Court of New Jersey,
Law Division, Middlesex County, Indictment No.
14-07-0836.

Edward C. Bertucio argued the cause for
appellant (Hobbie, Corrigan & Bertucio, P.C.,
attorneys; Mr. Bertucio, of counsel and on the
briefs; Elyse S. Schindel, on the briefs).

Brian D. Gillet, Deputy First Assistant
Prosecutor, argued the cause for respondent
(Andrew C. Carey, Middlesex County Prosecutor,
attorney; David M. Liston, Assistant
Prosecutor, of counsel and on the brief).

PER CURIAM

    Defendant Charles Hoens, III, appeals the trial court's June

1, 2016 order denying his post-sentencing motion to withdraw his

guilty plea to second-degree theft, N.J.S.A. 2C:20-3, and second-degree official misconduct, N.J.S.A. 2C:30-2. The thrust of defendant's motion is that he should now be permitted to withdraw his plea because the two attorneys who successively represented him before and during the plea entry and at sentencing were ineffective and failed to adequately safeguard his interests in the criminal process.

For the reasons that follow, we remand for an evidentiary hearing. We do so in light of the discrete allegations presented, and the trial court's key assumption, which may have been legally mistaken, that defendant could tenably assert in a post-conviction relief ("PCR") petition claims of constitutional ineffectiveness against his first attorney concerning his representation before he was charged or indicted.

I.

Since we are remanding this matter for further factual development and legal analysis, we need not present the underlying chronology in a comprehensive or conclusive manner. The following will suffice for purposes of this opinion.

Defendant was employed by the Fire Commission of South Brunswick Township ("the Commission"). In that capacity, he had access to the bank account of Fire District Number 3 ("the Fire District"). During the relevant timeframe, defendant was

personally experiencing financial difficulties with his private business. Due to those difficulties, defendant began periodically diverting sums of money from the Fire District's bank account to his personal bank account. Defendant alleges that he intended to repay the diverted amounts once his financial situation stabilized.

Recognizing that the Commission is a public entity subject to audit, and that an upcoming audit would inevitably reveal his diversion of funds, defendant retained the services of a private criminal defense attorney ("the first attorney"). According to the affidavit defendant submitted in support of his plea withdrawal motion, defendant admitted to his first attorney that he had diverted what he estimated to be approximately $90,000 from the Fire District's bank account. Allegedly hoping to make restitution, defendant provided the first attorney with $90,000 out of funds that defendant had recently inherited. The first attorney deposited the $90,000 into an escrow account.

According to defendant's affidavit, his first attorney advised him that he "should go to the Middlesex County Prosecutor's Office and made a statement[,]" even though, as defendant contends, the Prosecutor's Office "had no information about this matter and had not begun an investigation against [him]." Defendant further attested that his first attorney "also indicated that he would

negotiate a plea deal with the State that would involve no jail time and would include payment of $90,000 as full restitution in this matter[.]"

The first attorney arranged a meeting with the Prosecutor's office, to which he accompanied defendant. The meeting occurred on December 19, 2012. At that session, defendant was given Miranda[1] warnings, waived his right to remain silent, and was then questioned by an investigator during a video-recorded interview. During that interview, which was later transcribed and made part of the present record, defendant admitted that he had diverted funds from the Fire District's bank accounts at various times in 2011 and 2012. He also agreed to make restitution and resign as a fire commissioner.

According to defendant's affidavit, his first attorney "did no prior investigation and did not obtain a formal written negotiation as to the State's intention with regard to [defendant's] statement." The attorney also allegedly "never did any subsequent follow up investigation after [defendant's] statement was given."

More specifically, defendant contends:

> The only information I received [from his first attorney] was a reassurance that there

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

was a "gentlemen's agreement" and that the deal between the State and myself would be to plead guilty to third degree theft in exchange for a sentence of straight, non-custodial probation without jail time and to pay $90,000 in restitution and move on with my life . . . . With that understanding in mind, and because that information had been represented to me, I made [my] statement to the Middlesex County Prosecutor's Office.

The State denies, however, the existence of any such unwritten "gentlemen's agreement." In this regard, the State points out that at the conclusion of defendant's recorded interview, the investigator warned him that there would be consequences for the actions to which defendant had confessed and that the investigator would be forwarding the information to his superiors. The investigator added "I can't promise you anything. I don't know where they're going to go with this." The transcript reflects that defendant and his first attorney were both given the opportunity to put "anything else on the record" before the recording ended, and they did not do so. On December 19, 2013, the Prosecutor's Office issued a criminal complaint against defendant, charging him with second-degree theft in a cumulative sum of $695,795.46.

Before defendant was indicted by a grand jury, the first attorney moved to be relieved as counsel for reasons of non-payment of fees. In his supporting certification, the first attorney

stated that the retainer defendant had paid to the attorney's law firm "was set to address only representation during the [matter's] investigative phase, and did not contemplate representation once adversarial proceedings commenced." The certification further added that defendant's written retainer agreement was "limited to the Investigation[,]" and that the retainer had been exhausted since the time the criminal charges were filed. Counsel also referred to the $90,000 in the firm's escrow account, and the court's oral direction to not dispense those funds without leave of court. The trial court granted the first attorney's motion to be relieved.

Meanwhile, on May 29, 2014, a grand jury issued a five-count indictment against defendant, charging him with one count of second-degree theft, N.J.S.A. 2C:20-3 (Count 1); two counts of first-degree financial facilitation of criminal activity, N.J.S.A. 2C:21-25 (Counts 2 and 3); one count of second-degree official misconduct, N.J.S.A. 2C:30-2 (Count 4); and one count of third-degree pattern of official misconduct, N.J.S.A. 2C:30-7 (Count 5). Defendant then requested representation from the Office of the Public Defender. A trial attorney ("the second attorney") was assigned to represent him.

Plea negotiations ensued, resulting in a written agreement between defendant and the State dated November 10, 2014. The

agreement provided that defendant would plead guilty to counts one (second-degree theft) and four (second-degree official misconduct), and the other three counts of the indictment would be dismissed. The State agreed to recommend at sentencing that defendant receive a ten-year custodial term, with a five-year period of parole ineligibility, with defendant having the right to argue for a shorter term of five years. Defendant also agreed to execute a consent judgment at sentencing to be liable for restitution in the recalculated sum of $736,847.75.

Defendant appeared before the trial court on November 10, 2014, at which time his guilty plea was placed on the record. During extensive questioning at that plea hearing, defendant, who is a businessman with advanced degrees, repeatedly acknowledged that he understood the terms of the plea agreement and was entering into it voluntarily.

About six months later, defendant appeared before a different judge for sentencing. As permitted by the plea agreement, the court sentenced defendant to five years in prison (less than the ten years advocated by the State) with a five-year parole ineligibility period. In addition, defendant was ordered to make restitution in the sum of $736,847.75, reflected on the consent judgment. Defendant was also ordered to pay customary fines and

penalties, and was permanently disqualified from holding any public office in this State in the future.

Defendant did not appeal his sentence. Instead, he retained new private counsel and filed the instant motion to withdraw his guilty plea pursuant to Rules 3:9-2 and 3:9-3 and the withdrawal factors of State v. Slater, 198 N.J. 145 (2009). As a critical part of his arguments, defendant asserted that his first attorney and his second attorney were each, for different reasons, ineffective and violated his federal and state constitutional rights under the precepts of Strickland v. Washington, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068, 80 L. Ed. 2d 674, 697 (1984) and State v. Fritz, 105 N.J. 42 (1987).

As to his first attorney, defendant argued that the attorney was deficient in allowing him to make incriminating statements in a recorded interview with the Prosecutor's Office without a written agreement specifying how that statement could be used, and by instead advising defendant that he was protected by an unwritten alleged "gentlemen's agreement." As to the second attorney, defendant contends that the attorney coerced him into accepting the terms of the plea negotiation, and also failed to argue at sentencing that defendant should receive a sentence one degree lower, as permitted in appropriate situations by State v. Rice, 425 N.J. Super. 375 (App. Div. 2012).

After considering these arguments and the State's opposition, the motion judge (who had also been the sentencing judge in this case[2]) denied defendant's motion without an evidentiary hearing. The judge concluded that defendant had not shown a basis for relief under the four criteria of Slater, supra. In addition, the judge noted in his May 19, 2016 oral ruling that defendant could pursue relief in a future PCR proceeding in which matters outside the existing record could be developed. The judge further noted that, to the extent defendant argued that the amount of court-ordered restitution was excessive, defendant was free to file a motion to seek to have the sum recalculated and an ability-to-pay hearing. The court memorialized that right in its written corresponding order, allowing defendant to submit his calculations as to the proper amount of restitution to the prosecutor's office and that if the prosecutor disagreed with these figures, defendant could request a hearing on the issue.

## II.

This appeal ensued. Defendant presents the following arguments for our consideration:

> THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO WITHDRAW HIS GUILTY PLEA PURSUANT TO STATE V. SLATER AND STRICKLAND V. WASHINGTON. APPELLANT ENTERED A GUILTY PLEA

---

[2] Both the plea judge and the sentencing/motion judge are now retired.

INVOLUNTARILY AND AS THE RESULT OF THE INEFFECTIVE ASSISTANCE OF COUNSEL OF HIS TWO PRIOR ATTORNEYS.

A. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO WITHDRAW THE GUILTY PLEA PURSUANT TO STATE V. SLATER.

B. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO WITHDRAW THE GUILTY PLEA PURSUANT STRICKLAND V. WASHINGTON.

The parties agree that defendant's motion to withdraw must be evaluated under the four factors set forth by the Supreme Court in Slater, supra. Those factors are:

> (1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused.
>
> [Id. at 157-58].

None of these factors, including a colorable claim of innocence, is required or dispositive. Id. at 162; see also State v. Munroe, 210 N.J. 429, 442-43 (2012). As defendant acknowledges, the burden of justifying a requested withdrawal is heavier where, as here, the motion to withdraw is made after, rather than before, sentencing. Slater, supra, 198 N.J. at 160; see also Munroe, supra, 210 N.J. at 442-43. Generally, the decision on whether to grant or deny a motion to withdraw a plea rests in the "sound

discretion" of the trial court. <u>Munroe</u>, <u>supra</u>, 210 <u>N.J.</u> at 442; <u>see also</u> <u>Slater</u>, <u>supra</u>, 198 <u>N.J.</u> at 156.

We agree with the trial court that the first <u>Slater</u> factor of "colorable claim of innocence" tips against defendant here. Defendant concedes that he repeatedly diverted funds from the fire district. The only caveat he alleges is that his state of mind in doing so was not sufficiently venal to satisfy the theft and official misconduct statutes beyond a reasonable doubt. He also contests the quantification of the amount diverted, although he has not yet offered a competing calculation.

The third and fourth factors do not manifestly weigh in defendant's favor. As to the third factor, defendant's guilty plea was entered pursuant to a negotiated agreement, although that is the factor that "receives the least weight in the overall analysis[.]" <u>Munroe</u>, <u>supra</u>, 210 <u>N.J.</u> at 443. As to the fourth factor, the State surely will sustain some prejudice if the plea were withdrawn post-sentencing, although we presume that the documentation of the financial accounts still exists and that defendant's incriminatory recorded statement remains preserved in audio form.

The critical questions posed here arise under the second <u>Slater</u> factor, i.e., "the nature and strength of defendant's reasons for withdrawal." <u>Slater</u>, <u>supra</u>, 198 <u>N.J.</u> at 159. In his

11                                                    A-4208-15T1

motion affidavit, defendant has detailed several reasons why his first attorney was allegedly deficient in arranging the taped interview with the Prosecutor's Office without any formal written agreement to address the future uses of that recording. His assertion that his first attorney advised him of a so-called "gentlemen's agreement" limiting his criminal exposure is presently unrefuted, at least as to the alleged advice itself. We simply do not know what the first attorney would have to say on the subject and what, if any, documentation exists in the first attorney's files that might refute defendant's sworn assertion about what he was told.

Analysis of the second factor becomes more problematic because the trial court may have been under a possibly mistaken assumption that defendant could have, at least as a matter of law, pursued claims of ineffectiveness against his first attorney for allegedly deficient representation occurring before he was ever charged. As the State points out in its brief, the constitutional right to representation generally is not triggered until a criminal defendant is formally charged. See Kirby v. Illinois, 406 U.S. 682, 688-89, 92 S. Ct. 1877, 1881-82, 32 L. Ed. 2d 411, 417 (1972); State v. Sanchez, 129 N.J. 261, 265 (1992). In a case we found and provided to counsel before oral argument, the Second Circuit Court of Appeals in Claudio v. Scully, 982 F.2d 798, 802 (2d Cir.

1992), held that there is no constitutional right under the Sixth Amendment to a defendant for allegedly deficient representation by a criminal defense attorney who took his client to police for questioning before charges were ever filed against that defendant.

Our New Jersey courts have yet to address the specific issue posed in Claudio. At a minimum, without deciding that legal issue on appeal at this time, there appears to be substantial doubt that claims of ineffectiveness are viable for missteps by defense counsel before charges are ever filed. The motion judge thus may have incorrectly presumed that PCR is a viable option for defendant, at least with respect to the first attorney. Although the motion judge's remarks on the record about PCR may have solely concerned the second attorney, whose representation was post-indictment, we cannot be confident that the motion judge implicitly assumed that PCR was available to raise ineffectiveness claims concerning both attorneys. See State v. Brito, 345 N.J. Super. 228, 230 (App. Div. 2001) (remanding a case where the trial court "operat[ed] under a misapprehension as to the nature of the proceedings before it").

Under these discrete circumstances, we deem it preferable for this matter to be remanded for the trial court to conduct an evidentiary hearing to explore the pertinent factual issues in more depth, including taking testimony from defendant and, if

13

feasible, his two prior counsel, and considering any relevant documents from their prior representation addressing the assertions made in defendant's affidavit. The trial court shall then reevaluate the <u>Slater</u> factors, particularly under the second prong. Although the focus of our concerns relates mainly with the first attorney, we decline to address the second attorney's conduct at this time and instead defer that to the overall mix of considerations on remand. The trial court shall also consider, in the first instance, the constitutional issues posed, to the extent the court finds it necessary to reach them in its analysis.

Remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4208-15T1