**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0815-18T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JERMAINE J. OLIVER, a/k/a
OLIVER JERMAINE, HILL,
OLIVER JEROME, OLIVER
JERMAINE, OLIVER
JERMAINE J., OLIVER
JACKIE J., and OLIVER JACKIE,

    Defendant-Appellant.

_____

Submitted June 3, 2020 – Decided July 1, 2020

Before Judges Whipple and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Indictment No. 14-10-1212.

Joseph E. Krakora, Public Defender, attorney for appellant (Al Glimis, Designated Counsel, on the brief).

Angelo J. Onofri, Mercer County Prosecutor, attorney for respondent (Laura Sunyak, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Following the denial of his pre-sentence motion to withdraw his guilty pleas, defendant was sentenced in accordance with a plea agreement to an aggregate seven-year term of imprisonment, subject to an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.  He now appeals from the October 4, 2018 judgments of conviction, raising the following point for our consideration:

> POINT I
>
> THE COURT ABUSED ITS DISCRETION BY IGNORING EVIDENCE OF [DEFENDANT'S] COLORABLE CLAIM OF INNOCENCE AND BY DENYING HIS PRE-SENTENCING PLEA-WITHDRAWAL MOTION.
>
> A.    [DEFENDANT] ASSERTED A COLORABLE CLAIM OF INNOCENCE BY PRESENTING "SPECIFIC POTENTIALLY PLAUSIBLE FACTS, AND NOT SIMPLY A BALD ASSERTION."
>
> B.    [DEFENDANT] ASSERTED STRONG REASONS FOR WITHDRAWAL.
>
> C.    THE EXISTENCE OF A PLEA BARGAIN SHOULD NOT OUTWEIGH THE OTHER FACTORS.

D. WITHDRAWAL WOULD NOT RESULT IN UNFAIR PREJUDICE TO THE STATE OR ADVANTAGE TO THE DEFENDANT.

E. [DEFENDANT] HAS MET ALL OF THE SLATER[1] REQUIREMENTS FOR PLEA WITHDRAWAL, AND THE TRIAL JUDGE'S REFUSAL TO HONOR HIS REQUEST WAS AN ERROR REQUIRING REVERSAL.

We reject defendant's contentions and affirm.

On February 4, 2016, defendant was charged in a twelve-count Mercer County indictment with second-degree eluding, N.J.S.A. 2C:29-2(b) (count one); four counts of second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(6) (counts two through five); fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a)(2) (count six); four counts of third-degree assault by auto, N.J.S.A. 2C:12-1(c)(2) (counts seven through ten); second-degree assault by auto, N.J.S.A. 2C:12-1(c)(2) (count eleven); and fourth-degree assault by auto, N.J.S.A. 2C:12-1(c)(2) (count twelve). The indictment stemmed from allegations that while attempting to elude police during a high-speed pursuit, defendant rear-ended one vehicle and crashed head-on into another, injuring the occupants of both vehicles. After the crash, defendant was arrested when he tried to flee on foot.

---

[1] State v. Slater, 198 N.J. 145 (2009).

A-0815-18T4

Richard Nelson, a passenger in defendant's vehicle at the time of the crash, gave a statement to police identifying defendant as the driver.

On November 14, 2016, defendant entered a negotiated guilty plea to count two of the indictment, as well as a one-count accusation charging him with third-degree possession of a sawed-off shotgun, N.J.S.A. 2C:39-3(b). Defendant also pled guilty to violations of probation on two earlier convictions. During the plea colloquy, as to the indictment, defendant admitted causing bodily injury to the victim on June 22, 2015, when he attempted to elude police in the motor vehicle he was operating and caused an accident. Regarding the accusation, defendant admitted that on January 22, 2016, he was in possession of "a Springfield 67F 12[-]gauge shotgun" in the City of Trenton. Additionally, defendant admitted violating his probation by incurring the new charges. In accordance with Rule 3:9-2, the judge accepted the guilty pleas, finding that "defendant [was] competent," and that "[t]he pleas [were] being made freely, knowingly, intelligently and voluntarily" with "sufficient factual bases" to support the charges.

On June 7, 2017, prior to sentencing, defendant moved to withdraw his guilty pleas. In a supporting certification, defendant averred that when he entered the guilty pleas, he "had been diagnosed with and suffered from Bipolar

4

Disorder and Schizophrenia" and was "prescribed [twenty-eight] medications for various mental and physical ailments," but "had not been provided Seroquil, Zofran, Percocet, and Xanax." Additionally, according to defendant, he "indicated to [his then attorney] that there were witnesses" who "would exonerate [him] and provide statements to that effect." Defendant submitted an "attorney ethics grievance form" he had filed against his plea counsel on April 27, 2017, alleging "[s]he misled [him] on the case" and "held onto information about the case that [would] prove [his] innocence." Defendant also submitted a report of a psychiatric evaluation conducted on October 2, 2015, at an outpatient facility, as well as a certification prepared on May 31, 2016, by Nelson.

In the certification, Nelson averred that "[c]ontrary to the police report, [he] did not tell police that [defendant] was the driver." He explained that the driver was an unidentified "third person" who was driving them "to buy synthetic marijuana." According to Nelson, after the crash, "[he] was briefly knocked out" and "[w]hen [he] regained consciousness[,] the driver was gone." Nelson claimed that before the police pulled them out of the car, he "pulled" defendant from the backseat "into the front passenger seat" while he (Nelson) "scooted over to the driver side."

On August 22, 2018, following oral argument, the trial judge denied defendant's motion. In an oral opinion, the judge analyzed each of the four Slater factors: "(1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused." 198 N.J. at 157-58. Because the judge determined defendant failed to meet his burden in establishing "even one of the Slater factors," the judge concluded "the interests of justice [did] not support the . . . motion."

Regarding the first Slater factor, the judge determined that rather than asserting a colorable claim of innocence, "defendant's assertion [was] exactly the type that the Slater [C]ourt" rejected.[2] As to the second Slater factor, the judge determined defendant failed to advance "a good faith basis for asserting a defense on the merits." The judge also dismissed as "baseless" defendant's purported reasons for withdrawal, namely his "ineffective . . . counsel" and failure to "fully understand the nature of the guilty plea[s]" due to "mental

_____

[2] In Slater, the Court catalogued "examples" of cases in which withdrawal of a plea was warranted, including where "the defendant has not only made a plausible showing of a valid defense against the charges, but also credibly demonstrated why that defense 'was forgotten or missed' at the time of the plea." Id. at 159-60 (citations omitted).

A-0815-18T4

instability." As to the former assertion, because plea counsel was aware of Nelson's certification, which was obtained prior to the plea hearing during an interview by an investigator for the Office of the Public Defender (OPD), the judge determined defendant "fail[ed] to assert facts that would have been revealed" through counsel's further investigation or facts that "potentially would have exonerated him."

As to defendant's latter assertion, the judge stated:

> While [defendant] was previously diagnosed with bipolar disorder and other psychotic [dis]order not due to a substance or known psychological condition by an advanced practice nurse at Oaks Integrated on October 2, 2015, the State is correct that the more recent mental evaluation is relevant to his mental stability at the time of the plea on November [14, 2016].
>
> That being said, on December [7], 2016, [defendant] was seen at his request for a mental health evaluation which reported that he was alert, aware and oriented. . . . Thereafter, on December [9], 2016, [defendant] was evaluated by Dr. Edward Hume. Dr. Hume reported that he had first seen [defendant] earlier in February of 2016 and his impression at that time was that [defendant] was malingering. . . .
>
> Dr. Hume noted next that he saw [defendant] on April [8], 2016, and concluded that [defendant] had no active psychiatric disorder. . . . Dr. Hume then saw [defendant] on March [6], 2017, and reported that his medications, specifically Seroquel, Depakote, Xanax, [and] Gabapentin are either drugs of abuse, drugs with

no psychiatric indications or both with the exception of the Depakote. . . .

Dr. Hume concluded that [defendant] has no treatable psychiatric illness, and that while he could continue to take Depakote for seizures, no psychiatric meds were needed at his evaluation. . . .

Thereafter, on May [9], 2017, a psychologist, Dr. Melissa M. Detora evaluated [defendant]. Dr. Detora concluded that [defendant] does not present with any acute mental health issues at this time other than ADHD. He appears to be feigning and exaggerating symptoms to obtain medications.

Further, based on his review of the November 14, 2016 plea colloquy, the judge was "satisfied" that defendant "underst[ood] the questions posed by the [c]ourt" and "answered each question without hesitation." The judge found "that defendant knowingly, intelligently and voluntarily entered into the plea agreement," and "testified under oath that he was satisfied with defense counsel, he had the opportunity to review the discovery, and he understood the charges against him."

Turning to the third Slater factor, while the judge acknowledged that defendant had "a heavier burden" because he pled guilty "pursuant to a plea bargain," the judge did "not give great weight to this factor in the overall analysis," notwithstanding the fact that defendant benefited from the dismissal of numerous charges and reduced sentencing exposure. Finally, the judge

8

determined that the fourth Slater factor did "not weigh in favor of defendant" in "light of the fact that the three preceding factors" weighed against him. The judge entered a memorializing order and set a sentencing date for the following month. Thereafter, on September 21, 2018, defendant was sentenced in accordance with the plea agreement, and this appeal followed.

On appeal, defendant focuses solely on his guilty plea to the eluding indictment, asserting that "[s]ince the conviction . . . was a substantial part of the plea agreement, the entire plea agreement should be vacated" because the judge failed to "proper[ly] balanc[e] . . . the Slater factors under the more liberal pre-sentence standard for plea withdrawals." Specifically, defendant argues the judge abused his discretion "in failing to consider Nelson's certification" to satisfy the first Slater factor, in finding that "the lack of prescribed psychiatric medications" failed to satisfy the second Slater factor, and in evaluating "the fourth Slater factor . . . based on an erroneous assessment" of the other factors. We disagree.

"A more relaxed standard applies to plea-withdrawal motions made before sentencing" than after sentencing. State v. Munroe, 210 N.J. 429, 441 (2012). "Before sentencing, a 'defendant shall be permitted to withdraw' a guilty plea if 'the interests of justice would not be served by effectuating the [plea]

agreement.'" Ibid. (alteration in original) (quoting R. 3:9-3(e)). "In such cases, 'courts are to exercise their discretion liberally to allow plea withdrawals,'" and "[i]n a close case, the 'scales should usually tip in favor of defendant.'" Ibid. (quoting Slater, 198 N.J. at 156). "However, '[l]iberality in exercising discretion does not mean an abdication of all discretion.'" Id. at 441-42 (quoting Slater, 198 N.J. at 157). Thus, "[o]n appellate review, the issue is whether the trial court properly exercised its discretion at the time it denied the withdrawal motion." Id. at 443. A trial court abuses its discretion "when 'there has been a clear error of judgment.'" Id. at 448 (quoting State v. Koedatich, 112 N.J. 225, 313 (1988)).

"In moving to withdraw a guilty plea, the defendant bears the burden of presenting a 'plausible basis for his request' and a good-faith basis for 'asserting a defense on the merits.'" Id. at 442 (quoting Slater, 198 N.J. at 156). In turn, in deciding a plea withdrawal motion, "courts should 'consider and balance'" the four factors identified in Slater. Munroe, 210 N.J. at 442 (quoting Slater, 198 N.J. at 157-58).

As to the first Slater factor, "[a] colorable claim of innocence is one that rests on 'particular, plausible facts' that, if proven in court, would lead a reasonable factfinder to determine the claim is meritorious." Ibid. (quoting

Slater, 198 N.J. at 158-59). While "[i]t is more than '[a] bare assertion of innocence,' . . . the motion judge need not be convinced that it is a winning argument because, in the end, legitimate factual disputes must be resolved by the jury." Ibid. (quoting Slater, 198 N.J. at 158). However, the trial judge must still distinguish between "a colorable claim of innocence" and a "bald assertion." State v. Lipa, 219 N.J. 323, 333-34 (2014). Doing so requires a judge to engage in some weighing of evidence to determine whether facts are "credible" or "plausible." Ibid.

As to the second Slater factor, "[t]he nature and strength of a defendant's reasons for withdrawal of a plea will necessarily depend on the circumstances peculiar to the case." Munroe, 210 N.J. at 442. "A defendant will likely satisfy this factor if he can make a 'plausible showing of a valid defense against the charges' and credibly explain why an otherwise legitimate defense was overlooked during the plea colloquy." Id. at 443 (quoting Slater, 198 N.J. at 159-60).

> A court should evaluate the validity of the reasons given for a plea withdrawal with realism, understanding that some defendants will be attempting to game the system, but not with skepticism, for the ultimate goal is to ensure that legitimate disputes about the guilt or innocence of a criminal defendant are decided by a jury.
>
> [Ibid.]

11

The third Slater factor "receives the least weight in the overall analysis." Munroe, 210 N.J. at 443. "Although this factor should not be discounted, for our system 'rests on the advantages both sides receive from' the plea-bargaining process, '[courts] recognize that the vast majority of criminal cases are resolved through plea bargains.'" Ibid. (quoting Slater, 198 N.J. at 161). The critical inquiry in evaluating the fourth and final Slater factor "is whether the passage of time has hampered the State's ability to present important evidence." Munroe, 210 N.J. at 443 (quoting Slater, 198 N.J. at 161). "Thus, the trial court must consider the delay to the State in presenting its case to the jury because of the plea-withdrawal motion." Ibid.

Applying these factors, our Supreme Court held that the trial court erred in denying the defendants' respective pre-sentence motions to withdraw their guilty pleas in Slater, Munroe, and Lipa. In Slater, the defendant pled guilty to possession with intent to distribute cocaine after police discovered drugs and a scale in a motel room he occupied. Id. at 151. Less than two weeks later, Slater sought to withdraw his plea, asserting that he had not rented the motel room; he was just visiting; he was unaware the drugs were in the room; and the drugs did not belong to him. Id. at 152-53. Slater's account was supported by the record evidence that the police approached the motel room in search of two white men

who allegedly possessed cocaine; but, Slater was African-American. Id. at 151-52, 163. Also, the State failed to disprove Slater's claim that he did not rent the room and was only visiting. Additionally, Slater asserted his innocence claim both in his pro se plea withdrawal motion and in remarks he made for inclusion in the presentence report. Id. at 163.

In Munroe, the defendant pled guilty to aggravated manslaughter, but supported a self-defense claim with evidence that the victim, "who had robbed him in the past," threatened him with a knife and a parked car blocked the defendant's retreat. Id. at 445. A police report confirmed that the deceased victim was found with a box cutter in his hand, and the State presented no witness statements contradicting Munroe's claim he had no room to retreat. Id. at 445-47. The Court found Munroe's admission in his initial plea colloquy that he shot the victim at close range was not inconsistent with his later claim of self-defense. Id. at 445. "[N]ot a word that defendant uttered in court during his plea colloquy was inconsistent with either the account that he gave to the probation officer who prepared his presentence report or his sworn testimony when he moved to withdraw his guilty plea." Ibid.

In Lipa, the defendant pled guilty to first-degree aggravated sexual assault. Id. at 326. To support his plea withdrawal motion, he presented

A-0815-18T4

photographic evidence of his knee, which was operated on around the time in question, as well as the exterior of the subject building, to establish that it was impossible for him to climb into the victim's second-floor bedroom window, as she had alleged. Id. at 333. The Court noted that because the victim asserted that Lipa "was inebriated" when he committed the offenses, "[h]is condition thus would have further hampered his ability to commit the assault in the manner [the victim] described." Ibid. Lipa also presented evidence that "a [Division of Youth & Family Services] investigation found that [the victim's] previous accusations of sexual assault against [the] defendant and a family friend lacked merit." Ibid.

"[M]indful that the admissibility and veracity of [the] defendant's evidence ha[d] not been tested," the Court determined "the specific facts that [the] defendant asserted could provide a plausible basis to impeach [the victim's] testimony and cause a reasonable jury to find reasonable doubt as to [the] defendant's guilt." Id. at 334. Further, the Court found that the defendant "presented sufficient reasons to support his request for withdrawal" by "claim[ing] that his counsel induced him to plead guilty" and by "offer[ing] some evidence that contradicts the State's charges." Id. at 335.

We draw from these cases the principle that evidence corroborating a defendant's claim of innocence supports the claim's plausibility, as does the State's failure to present evidence on easily verifiable facts that would undermine the defendant's innocence claims. Here, as to the first Slater factor, defendant relies on a certification in which Nelson recants his earlier statement to police incriminating defendant, in order to establish a colorable claim of innocence. Notably, defendant was aware of the certification, which was prepared during an OPD investigator's interview conducted almost six months before defendant pled guilty.

"[C]ourts may look to 'evidence that was available to the prosecutor and to the defendant through our discovery practices at the time the defendant entered the plea of guilt.'" Slater, 198 N.J. at 158-59 (quoting State v. Smullen, 118 N.J. 408, 418 (1990)). Through this lens, we are satisfied defendant's proffer fails to establish the "colorable claim of innocence" standard countenanced in Slater, Munroe, and Lipa. Defendant failed to either "present specific, credible facts" or "point to facts in the record that buttress [his] claim." Id. at 158 (citations omitted). On the contrary, nothing in the record supports defendant's account. Indeed, the presentence report indicated that after the crash, "[t]he driver of the suspect auto," identified as defendant, "exited the auto

and began to run from the scene" before "[p]olice tackled him to the ground and placed him under arrest." Additionally, during his presentence interview, defendant admitted that "he was driving" when "police began chasing him."

Defendant also failed to establish the second Slater factor, which "dovetails with his assertion of innocence," id. at 163, and requires a "showing of a valid defense against the charges." Id. at 159-60. Thus, this factor likewise finds no support in the record. Additionally, we are convinced the judge properly rejected as belied by the record defendant's claim that his mental impairment resulting from the lack of prescribed psychiatric medications prevented him from entering a knowing, voluntary, and intelligent guilty plea. See R. 3:9-2.

Further, the third Slater factor, "[t]he presence of a plea agreement, weighs against defendant," albeit not heavily. Lipa, 219 N.J. at 335. Defendant entered his plea as part of a plea agreement that involved the dismissal of related charges that could have resulted in consecutive sentences. Finally, as to the fourth Slater factor, "[t]he State is not required to show prejudice if a defendant fails to offer proof of other factors in support of the withdrawal of a plea." 198 N.J. at 162. In sum, after balancing the evidence and arguments, we agree with the judge

16

that defendant failed to meet his burden, and we discern no abuse of discretion in the judge's denial of defendant's pre-sentence plea withdrawal motion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0815-18T4