# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1652-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

J.R.S.,[1]

     Defendant-Appellant.

_____

Submitted February 7, 2022 – Decided March 21, 2022

Before Judges Rothstadt and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 13-05-1090.

Joseph E. Krakora, Public Defender, attorney for appellant (Frank M. Gennaro, Designated Counsel, on the brief).

Theodore N. Stephens, II, Acting Essex County Prosecutor, attorney for respondent (Caroline C. Galda, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

---

[1] We use initials to protect the identity of the victim and to protect her confidentiality. R. 1:38-3(c)(12).

PER CURIAM

Defendant J.R.S. appeals from a Law Division order, entered after an evidentiary hearing, denying his petition for post-conviction relief (PCR) and motion to withdraw his guilty plea. We affirm.

I.

We detail the relevant facts related to defendant's plea agreement and sentence to provide context for our opinion. Defendant was arrested after D.S., his then eight-year-old daughter, reported that he repeatedly anally, orally, and digitally penetrated her. Defendant was later charged in a multi-count indictment with first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(l) (counts one, two and five); second-degree sexual assault, N.J.S.A. 2C:14-2(b) (count three); and second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a) (counts four and six). He was also charged with third-degree terroristic threats and simple assault in a separate indictment.

Defendant ultimately pled guilty to three counts of first-degree aggravated sexual assault as listed in counts one, two, and five. Under the terms of the plea agreement, the State agreed to recommend that defendant be sentenced as a second-degree offender to an aggregate eight-year term of imprisonment, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, Megan's Law

registration requirements, N.J.S.A. 2C:7-2, and parole supervision for life (PSL). The State also agreed to dismiss the remaining charges in both indictments.

At the plea hearing, the judge thoroughly reviewed the plea agreement with defendant and inquired multiple times if he had any questions, or if he did not understand any part of the proceedings. The prosecutor also explained the terms of the plea, after which defendant expressed an understanding of its terms. In addition, defendant confirmed that he reviewed the supplemental questions in the plea form related to sex offenders and the attendant implications of PSL.

Defendant then provided a factual basis for his plea. He admitted that he sexually assaulted his eight-year-old daughter by penetrating her with his penis anally and orally and digitally penetrating her anally with his fingers.

At the May 12, 2014 sentencing hearing, conducted before the same judge that accepted his plea, defendant was sentenced in accordance with the plea agreement. Specifically, the judge imposed a concurrent eight-year sentence on counts one and two, subject to an 85% period of parole ineligibility in accordance with NERA, as well as a special five-year term of parole supervision upon his release.

A-1652-19

As the judge began to sentence defendant on count five, however, the prosecutor and court clerk interrupted him, with the prosecutor incorrectly stating that the defendant also pled guilty to count three. The prosecution's confusion was based on an inconsistency in the plea form and the pre-sentence report. The plea forms reflected defendant's intention to plead guilty to counts one, two and five of the indictment, but the presentence report indicated defendant pled guilty to counts one, two, three and five. The judge proceeded to sentence defendant on count three to the same eight-year concurrent term as counts one and two, along with similar parole requirements. To address the confusion regarding defendant's plea, the judge determined he would listen to the CourtSmart recording of the plea proceeding and continue the sentencing proceeding on another day.

The judge continued the sentencing proceeding on August 15, 2014, and acknowledged that defendant's plea called for him to plead guilty only to counts one, two and five, and not count three. The judge noted that the sentence he imposed on count three, was accurate, but the count he referenced was incorrect, and accordingly corrected the record to indicate that defendant entered a plea of guilty to count five, and not count three.

4

When asked if he understood this modification, defendant responded that he did not, and noted that his parents had retained a new attorney to represent him. Defendant requested that the court adjourn the hearing until his new attorney could appear. The judge denied his request but stated that it would consider any application that his new attorney filed.

The judge thereafter entered a judgment of conviction (JOC) on August 25, 2014 that correctly reflected defendant pled guilty to counts one, two and five. That JOC also stated that the court sentenced defendant to eight years confinement on each term, to run concurrently, and also ordered that defendant be subject to five years parole supervision on each count. On September 10, 2014, the judge issued an amended JOC to reflect that the PSL condition also applied to each of the counts.

Over three years after the court entered the September 10, 2014 JOC, on November 28, 2017, defendant filed a motion to withdraw his guilty plea under State v. Slater, 198 N.J. 145 (2009),[2] as well as a PCR petition claiming he

_____

[2] In Slater, the Supreme Court identified the following four factors for courts to evaluate when considering an application to vacate a guilty plea: "(1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused." Id. at 150. "Trial courts should consider

received ineffective assistance of counsel under <u>Strickland v. Washington</u>, 466 U.S. 688 (1984).[3]  Judge Arthur J. Batista granted defendant's request for an evidentiary hearing to address his application to withdraw his guilty plea and his PCR petition.  At that hearing, defendant testified, as did his mother and defendant's prior counsel.  On June 20, 2019, Judge Batista entered an order denying defendant's motion to withdraw his guilty plea.  The judge also rejected all of defendant's claims that his counsel was ineffective but ordered a new sentencing hearing.

In his accompanying comprehensive sixty-one-page written opinion, Judge Batista found that defendant entered into the plea knowingly and voluntarily based upon sufficiently acknowledged facts, "free of coercion of any sort."  As to defendant's ineffective assistance of counsel claims, the judge categorized defendant's arguments into the following "three areas of concern: (1) alleged strategies that [defendant] contends his counsel should have focused

---

and balance all of the factors discussed above in assessing a motion for withdrawal of a plea. No factor is mandatory; if one is missing, that does not automatically disqualify or dictate relief."  <u>Id.</u> at 162.

[3]  To establish ineffective assistance of counsel, a convicted defendant must satisfy the two-part test enunciated in <u>Strickland</u>, 466 U.S. at 687, by demonstrating that:  1) counsel's performance was deficient, and 2) the deficient performance actually prejudiced the accused's defense.  The <u>Strickland</u> test has been adopted in New Jersey.  <u>See</u> <u>State v. Fritz</u>, 105 N.J. 42, 58 (1987).

on or failed to investigate; (2) contentions that his counsel failed to review certain issues or proofs with [defendant] prior to his plea; and/or (3) misinformation purportedly delivered to [defendant] by his counsel prior to the entry of his plea."[4] After considering each of defendant's arguments, the judge concluded that defendant failed to satisfy either prong of the Strickland test and determined that the Slater factors weighed in favor of the State.

As to defendant's specific ineffective assistance of counsel claims, the judge found that "[defendant's counsel] did review discovery with [him],

---

[4] Judge Batista also specifically itemized defendant's ineffective assistance of counsel arguments. According to the judge, defendant claimed his counsel failed to: 1) consult adequately with him and prepare a defense; 2) provide and review discovery with him; 3) conduct a polygraph test and present to the prosecutor defendant's willingness to enter into a stipulation and take a polygraph; 4) retain an expert regarding defendant's alleged marijuana intoxication; 5) give proper attention to defendant's case due to his own legal issues including suspensions and possibly being under investigation for matters he was later indicted for by the Attorney General's Office; 6) take the matter to trial despite the "funds being exhausted;" 7) adequately go over the plea forms so that defendant understood them and improperly advising defendant to just say "Yes;" 8) provide correct advice regarding the Avenel finding's impact upon PSL restrictions; 9) correct the contents of the Avenel report and the Presentence Report which both incorrectly state the final counts to which he pled guilty; 10) provide correct advice regarding eligibility for release to a halfway house or camp; 11) argue mitigation on defendant's behalf and for a lower sentence and to ensure that the judge advised him of all aspects of sentencing including PSL, to ensure the proper jail credits, advise of appeal and PCR rights, to submit an appeal, and finally for substituting a different attorney at sentencing without securing defendant's consent.

adequately prepare[d] and review[ed] defenses with [him], and adequately consult[ed] with defendant prior to the entry of his plea." He further concluded that defendant understood the plea and was properly advised regarding parole supervision for life, as the "examination in the trial court was sweeping and included a review of the plea forms and all of the supplemental plea forms." The judge characterized the plea as "one of the most thorough [he has] seen with regard to informing [defendant] of the fact that he was going to be placed on [PSL]." The judge further noted that defendant never asked a question about PSL and was given eight opportunities to ask questions at the plea hearing, where the judge "went through all of the standard [and supplemental] plea form questions with defendant."

Judge Batista also found defendant's counsel's testimony to be truthful and credible as he was "consistent and forthright." In contrast, he determined defendant not to be credible, as he admitted lying to the judge during the plea hearing. He also found a "profound lack of support" for the argument that his counsel's performance was deficient due to any failure to obtain a polygraph test or an any tests or experts on the "marijuana intoxication issues."

Next, Judge Batista rejected defendant's argument that his counsel's disciplinary history supported any claim that he was ineffective. Specifically,

the judge found "no nexus exists between [his counsel's] alleged 2015 suspension from practice; his subsequent 2017 indictment, and his performance in [defendant's] 2013 case." He also found that defendant "failed to provide a scintilla of verifiable information" that any failure to correct errors in the presentence and Avenel reports "would have resulted in a further reduction of his overwhelmingly favorable sentence in his negotiated plea agreement."

Finally, as noted, Judge Batista evaluated the four Slater factors and denied defendant's petition to withdraw his plea. First, he found that defendant failed to present a "colorable claim of innocence," characterizing his "claims [as] speculative, wholly unsupported, and bluntly without merit." Second, as to the nature and strength of [defendant]'s reasons for withdrawal, the judge described those claims as "anemic, self-serving, and vastly embroidered to serve his studied purpose." Third, the judge acknowledged that there was a negotiated plea, but noted that defendant was sentenced one degree lower "when he faced a potential sixty years in prison." Finally, Judge Batista concluded that the State would suffer unfair prejudice if the plea were vacated.

Judge Batista concluded, however, that as a result of the interruption in defendant's sentencing, it appeared "the sentence was not fully completed and [the sentencing judge] instead adjourned the matter in an attempt to rectify

confusion caused by the prosecutor and the court clerk."  As such, Judge Batista determined that resentencing was necessary to address "several issues, including but not limited to, [the PSL] requirements, fines and mandatory assessments, DNA, jail credits, dismissed counts, and appeal and post-conviction relief rights," that were not addressed prior to the discontinuation of the first sentencing hearing or when the record was corrected at the second sentencing hearing.

Defendant was thereafter resentenced on November 15, 2019 by Judge Batista, who stated that he reviewed the plea paperwork, as well as the plea and sentencing transcripts, noting that he was "familiar with [defendant], [his] background, and this case."  The judge sentenced defendant as he stood before the court, and after addressing the applicable aggravating and mitigating factors under N.J.S.A. 2C:44-1(a) and (b), imposed the same eight-year aggregate sentence.

The judge informed defendant that he would have to comply with Megan's Law and thoroughly explained the attendant implications of that condition.  He further informed defendant of his obligation to provide a DNA sample, granted him jail credits and explained his right to appeal and PCR rights.

On November 25, 2019, the judge entered an amended JOC in accordance with the resentencing. Defendant did not file a direct appeal of that JOC, as he failed to do with respect to the September 10, 2014 amended JOC, and instead solely challenges Judge Batista's denial of his PCR petition and application to withdraw his guilty plea, raising the following arguments:

    I.   THE PCR COURT IMPROPERLY DENIED DEFENDANT'S CLAIMS THAT HE RECEIVED INEFFECTIVE ASSISTANCE OF HIS PLEA COUNSELS.

        A. THE PREVAILING LEGAL PRINCIPLES REGARDING CLAIMS FOR INEFFECTIVE ASSISTANCE OF COUNSEL, EVIDENTIARY HEARINGS AND PETITIONS FOR POST-CONVICTION RELIEF.

        B. BECAUSE DEFENDANT ESTABLISHED THAT HE RECEIVED INEFFECTIVE ASSISTANCE OF HIS PLEA COUNSELS, HE WAS ENTITLED TO POST-CONVICTION RELIEF.

    II.   DEFENDANT SHOULD HAVE BEEN PERMITTED TO WITHDRAW HIS GUILTY PLEA IN THE INTERESTS OF JUSTICE.

We reject all of defendant's arguments and affirm substantially for the reasons detailed by Judge Batista in his thoughtful and comprehensive written opinion. The judge correctly denied defendant's PCR petition after determining defendant failed to satisfy either the performance or prejudice prong of the

11

Strickland test. That decision was supported by substantial credible evidence in the record, and in accordance with applicable legal principles. We also conclude Judge Batista correctly denied defendant's motion to withdraw his guilty plea. We provide the following comments to amplify our decision.

II.

In his first point, defendant reprises many of the arguments he raised before Judge Batista. Specifically, he argues that his plea counsel provided ineffective assistance in failing to: review discovery with him, secure a polygraph examination and marijuana intoxication expert, argue for mitigation of his sentence, and file necessary pre-trial motions. He further contends that his counsel failed to review properly with him the implications of PSL, and claims he was misinformed regarding his eligibility for placement in a halfway house. Finally, he maintains that his attorneys' representation was constitutionally deficient because they should not have "permitted sentencing to be conducted without defendant being advised of his appellate and PCR rights." We disagree with all of these arguments.

Our review of a PCR claim after a court has held an evidentiary hearing "is necessarily deferential to [the] PCR court's factual findings based on its review of live witness testimony." State v. Nash, 212 N.J. 518, 540 (2013); see

also State v. O'Donnell, 435 N.J. Super. 351, 373 (App. Div. 2014) ("If a court has conducted an evidentiary hearing on a petition for PCR, we necessarily defer to the trial court's factual findings."). Where an evidentiary hearing has been held, we should not disturb "the PCR court's findings that are supported by sufficient credible evidence in the record." State v. Pierre, 223 N.J. 560, 576 (2015) (citations omitted). We review any legal conclusions of the trial court de novo. Nash, 212 N.J. at 540–41; State v. Harris, 181 N.J. 391, 419 (2004).

The first prong of the Strickland test requires a showing that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. A defendant, however, must overcome a strong presumption that counsel rendered reasonable professional assistance. Id. at 689. "The test is not whether defense counsel could have done better, but whether he met the constitutional threshold for effectiveness." Nash, 212 N.J. at 543. Further, the failure to raise unsuccessful legal arguments does not constitute ineffective assistance of counsel. State v. Worlock, 117 N.J. 596, 625 (1990) (citing Strickland, 466 U.S. at 688).

Under the second prong, a defendant must demonstrate that his counsel's errors prejudiced the defense such as to deprive defendant of a fair and reliable outcome. Strickland, 466 U.S. at 687. To prove this element, a defendant must

13

demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

In the context of a guilty plea, "a defendant must prove that there is a reasonable probability that, but for counsel's errors, [he or she] would not have pled guilty and would have insisted on going to trial." State v. Gaitan, 209 N.J. 339, 351 (2012) (alteration in original) (quoting State v. Nuñez-Valdéz, 200 N.J. 129, 139 (2009)). A defendant must also convince the court that "a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010).

Judge Batista rejected all of defendant's claims based primarily on his detailed credibility findings, to which we afford deference as they were all supported by the record. For example, the judge specifically noted he placed "little to no weight" on defendant's testimony because it was "not credible" and "in direct conflict with the plea colloquy, plea forms, and [counsel's] testimony."

In contrast, the judge found defendant's counsel to be credible and concluded that he not only reviewed discovery with defendant, but also reviewed the plea agreement and the plea forms. The judge accepted counsel's testimony that it was his practice to first review the plea agreement and then "go over all the questions in the plea form, question-by-question." Counsel also testified

that had defendant indicated any doubts about moving forward with the plea, he would have discontinued plea discussions with the State.

Judge Batista also rejected defendant's claims that plea counsel misinformed him regarding the effect of PSL and his potential placement in a halfway house. The judge found defendant's counsel to have "a very strong grasp of the subject matter" and was aware of the "procedures and intricacies of a sex assault plea," and therefore concluded that any "misadvice" on this subject "defie[d] logic." In addition, Judge Batista credited defendant's counsel's testimony that he never would have made any such promise regarding defendant residing in a halfway house, based in part upon counsel's statement that "if [defendant] was asking me about a halfway house, I would've told him there is no halfway house eligibility."

The judge also rejected defendant's argument that his counsel's performance was deficient because he failed to argue for a lesser sentence. The judge noted that defendant's position was contradicted by counsel's efforts at the first sentencing hearing in which he urged the court to consider certain mitigating circumstances, including defendant's supportive family, and his history of substance abuse issues. Further, Judge Batista noted that the sentencing judge stated he would not have sentenced defendant in accordance

15

with the plea had the victim's family not consented to the plea agreement, specifically stating that he did so because of D.S.'s mother's "consent and approval."

Finally, Judge Batista found that any decision made by defendant's counsel not to go to trial, and his failure to retain an expert on defendant's marijuana use, were sound strategic choices. As the judge explained, defendant's plea counsel testified he "knew of no cases where marijuana intoxication on a sexual assault case was used as a defense. So it would be my opinion based on the facts in this case that it would not be a viable defense."

As to the second Strickland prong, we agree with the judge that defendant "failed to provide a scintilla of verifiable information that any of counsel's alleged, but unproven, ineffectiveness would have resulted in a further reduction of his overwhelmingly favorable sentence in his negotiated plea agreement." We are therefore satisfied that defendant was not prejudiced by counsel's well-reasoned advice to accept the State's plea offer, as trial posed a significant risk, given defendant's potential exposure to three consecutive sentences of up to twenty years in prison. While we acknowledge that defendant should have been informed at his initial sentencing proceeding of his right to appeal, he was not

A-1652-19

prejudiced by that omission as he was afforded a full resentencing, at which the trial judge thoroughly informed him of all his post-judgment rights.

III.

In his second point, defendant argues that Judge Batista incorrectly denied his motion to withdraw his guilty plea. Relying on State v. Hayes, 205 N.J. 522 (2011), he contends the judge should not have applied the more stringent "manifest injustice" standard applicable to applications filed after sentencing and instead should have evaluated his Slater application through the prism of the more lenient interest of justice standard applicable to applications filed prior to sentencing, as his sentencing proceeding was interrupted, continued over his objection, and the court failed to inform him of his appellate and PCR rights, among other deficiencies. We disagree with these arguments, as we are satisfied from our review of the record that Judge Batista did not abuse his discretion when he denied defendant's motion.

We review a trial court's Slater analysis under an abuse of discretion standard "because the trial court is making qualitative assessments about the nature of a defendant's reasons for moving to withdraw his plea and the strength of his case and because the court is sometimes making credibility determinations about witness testimony." State v. Tate, 220 N.J. 393, 404 (2015). Further,

17

"[c]ourts should not upset a plea solely because of post[-]hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." Lee v. U.S., 137 S. Ct. 1958, 1967 (2017). Courts instead should "look to contemporaneous evidence to substantiate a defendant's expressed preferences." Ibid.

The decision to grant or deny a motion to retract a guilty plea is discretionary and is governed by four factors: "(1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused." Slater, 198 N.J. at 156-158 (quoting R. 3:9-3(e)). Application of these factors does not depend on the timing of the motion, but different standards apply depending on when the motion is filed in relation to sentencing. Id. at 158.

A motion to withdraw a plea made before sentencing is governed by the "interests of justice" standard in Rule 3:9-3(e). Id. at 156. By contrast, a motion made after sentencing is subject to a "manifest injustice" standard set forth in Rule 3:21-1. Ibid. Regardless of the timing, "'the burden rests on the defendant, in the first instance, to present some plausible basis for his request, and his good

faith in asserting a defense on the merits.'" Id. at 156 (quoting State v. Smullen, 118 N.J. 408, 416 (1990)).

Defendant correctly notes that in denying his Slater application, Judge Batista applied the "manifest injustice" standard. On this point, the judge stated defendant "filed his motion well after he was sentenced following his guilty plea" and rejected his argument that the interests of justice standard should apply because it was "incorrect and unsupported by court rule, statute, or case law." We find no error in this legal conclusion. Although we acknowledge that the court left certain matters unaddressed at the conclusion of his initial sentencing, defendant was indisputably "sentenced" under Rule 3:21-1 and the court entered an initial and an amended JOC.

Hayes, upon which defendant principally relies, does not compel a contrary result. In that case, our Supreme Court determined the "interest of justice" standard should apply to a defendant's application to withdraw his guilty plea when he was forced to proceed to sentencing without the benefit of counsel. Hayes, 205 N.J. at 542. Unlike in Hayes, defendant here was represented by counsel at both sentencing hearings and made his motion to withdraw his plea three years after those proceedings and the entry of an amended JOC.

In any event, based on the judge's extensive and detailed factual findings, which included specific, adverse credibility determinations, we are satisfied that defendant failed to establish relief even under the more liberal interest of justice standard. Indeed, as to the first Slater factor, defendant provided a detailed factual statement describing how he repeatedly sexually assaulted his eight-year-old daughter. He failed to assert his innocence until years later. Judge Batista considered these belated post-hoc claims of innocence and found them incredible, characterizing them as "speculative, wholly unsupported, and bluntly without merit." We discern no basis to disturb that finding.

Judge Batista similarly rejected defendant's reasons for seeking to withdraw his plea under the second Slater factor. He characterized defendant's claim that his counsel failed to inform him of the consequences of his plea, thereby rendering the plea involuntary and unknowing, as "anemic, self-serving, and vastly embroidered to serve his studied purpose." Based on our review of the plea and sentencing proceeding, we are satisfied that the judge's finding as to this factor was also amply supported by the record.

The third Slater factor was not in dispute as defendant entered into a favorable plea bargain with the State and was "sentenced . . . one degree lower when he faced a potential sixty years in prison on these charges." On the fourth

20

factor, whether withdrawal would result in "unfair prejudice to the State or unfair advantage to the accused," Judge Batista found it was "without question that the State would suffer unfair prejudice if the plea were allowed to be vacated," particularly given the time that has now passed since the assaults. The judge noted that D.S. was eight years old at the time of her assault in 2013, and "attempting to have this critical witness remember and rehash the incidents would prove more than a fair challenge for the State." That finding was similarly fully supported by the record. See State v. Munroe, 210 N.J. 429, 447 (2012) ("[A]ny prejudice to the State must be measured as of the time of the plea-withdrawal hearing date.").

To the extent we have not specifically addressed any of defendant's arguments, it is because we conclude they are of insufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1652-19