**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2008-20

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

BRAYAN RENDON-MONCADA,

    Defendant-Appellant.

_____

Submitted May 9, 2022 – Decided August 19, 2022

Before Judges Accurso and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 18-10-1120.

Nicholas R. Doria, attorney for appellant.

Mark Musella, Bergen County Prosecutor, attorney for respondent (William P. Miller, Assistant Prosecutor, of counsel; Catherine A. Foddai, Legal Assistant, on the brief).

PER CURIAM

Defendant Brayan Rendon-Moncada, a non-citizen of the United States, appeals from a February 12, 2021 order, denying his petition for post-conviction relief (PCR) following an evidentiary hearing on his claim that plea counsel was ineffective for failing to adequately advise of the immigration consequences of his guilty plea. Defendant also appeals from the PCR judge's September 29, 2020 order that denied: PCR without a hearing on his claim that plea counsel was ineffective for failing to pursue a self-defense claim; and defendant's motion to withdraw his guilty plea.[1] We affirm.

I.

The facts and procedural history are straightforward and set forth at length in the PCR judge's decisions that accompanied the orders under review. To summarize, in June 2018, defendant and his estranged wife, J.B.,[2] shared custody of their three-year-old son. On June 30, 2018, before arriving at defendant's home to pick up the child, J.B. sent defendant text messages expressing her displeasure with his social media post that depicted him with

---

[1] Although defendant's notice of appeal only references the February 12, 2021 order, the judge's opinion accompanying the order incorporated her September 29, 2020 decision. We therefore consider all issues raised on appeal.

[2] We use initials to protect the privacy of the victim. R. 1:38-3(c)(12).

another woman. As one notable example, J.B. stated: "Ill b [sic] there in a little BTW [sic] I got a baseball bat."

Defendant's landlord, Christopher France, was present at defendant's apartment when J.B. arrived. According to France, J.B. was "banging on the door extremely aggressively"; told defendant "she was going to fuck him up"; and threatened to punch him in the face. France "did not think anything of it" because he "heard [defendant] laugh." However, at some later point, France heard "a lot of hitting noises." When France looked down the stairs, he saw J.B. "on top of defendant, which looked like she had attacked him."

In his handwritten, July 4, 2019 affidavit to police, defendant claimed J.B. entered his home and "hit [him] in the stomach with her elbow." Defendant "didn't care" and continued watching Netflix with the couple's son. But J.B. punched defendant "[three] times in the face." Defendant told J.B. to leave, but J.B. bit and punched him. Defendant "pushed her back" and rhetorically questioned why she would act this way in front of their son. Defendant said J.B. did not listen, threw a punch at him, so he "hitted [sic] her . . . not to [sic] hard" to calm her down.

A-2008-20

When France heard J.B. moaning, he went to the basement where he saw J.B. laying on the floor. Defendant told France: "I did not want to hit her but look at what she has done."

Afterward, J.B. apologized to defendant and the couple stayed together that night. According to J.B.'s statement at defendant's sentencing, however, she was "scared to seek medical attention at the time" because she "was embarrassed to tell [her] family" and "didn't have health coverage." When J.B. eventually sought medical attention, she was diagnosed with a broken rib and a collapsed lung.[3]

On April 8, 2019, defendant pled guilty to third-degree aggravated assault on a domestic violence victim, N.J.S.A. 2C:12-1(b)(12), as a lesser-included offense of second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1), charged in a Bergen County indictment. In accordance with the negotiated plea agreement, on May 31, 2019, defendant was sentenced to a three-year probationary term on condition that he serve 180 days in the Bergen County Jail. The sentence was imposed concurrently to the probationary term defendant was serving. Defendant did not file a direct appeal.

---

[3] At some point prior to the grand jury presentation, J.B. claimed: "Defendant said, 'Let's see if you can take a punch,' and punched her four times."

## II.

On January 23, 2020, nearly seven months after he was sentenced, defendant filed a timely petition for PCR with the assistance of retained counsel. Defendant asserted plea counsel was ineffective for failing to: pursue a self-defense claim; and properly advise of the immigration consequences of his guilty plea. Contending he acted in self-defense and therefore asserted a colorable claim of innocence, defendant also moved to withdraw his guilty plea pursuant to the factors enunciated in State v. Slater, 198 N.J. 145, 157-58 (2009). Alternatively, defendant sought an evidentiary hearing on his PCR claims.

Following argument in May 2020, the PCR judge, who was not the plea judge, reserved decision. On September 2, 2020, the judge issued an order and a well-reasoned written decision, granting defendant's request for an evidentiary hearing on his claims that plea counsel was ineffective as to advice rendered on the potential immigration consequences of defendant's guilty plea, and whether plea counsel's advice affected defendant's ability to understand the consequences of his guilty plea under Rule 3:9-2.

However, the judge denied PCR on defendant's claims that plea counsel failed to pursue his self-defense claim and denied defendant's motion to withdraw his guilty plea under Slater. In reaching her decision, the PCR judge

5

thoroughly compared defendant's factual basis elicited at the plea hearing with his various other statements concerning the incident, including his sworn statement to police, and his statement to his probation officer, who prepared his presentence investigation report (PSR). The PCR judge also considered plea counsel's presentencing memorandum, which asserted "[J.B.] was the 'aggressor'" and "[defendant] acted to 'defend himself and end the altercation[,]'" but that "[he] recognize[d] that he had other options to end the altercation."

The PCR judge further cited the sentencing transcript, which indicated plea counsel commenced his argument, clarifying "[defendant] pled guilty because he takes full responsibility for his actions and also the outcome of his actions." Apparently citing the PSR, the trial court then confirmed, "[it] want[ed] to make sure he's not making a self-defense . . . or similar type of argument that would vitiate the plea." Plea counsel replied: "I think the record is clear that she did strike him first . . . But, again, he's taking responsibility for what happened thereafter." As the PCR judge noted, later during the sentencing hearing, defendant concluded his remarks expressing remorse.

In denying defendant's motion to withdraw his guilty plea, the PCR judge squarely addressed the contentions raised in view of the Court's decision in Slater and its progeny. Quoting Slater, 98 N.J. at 158-59, and State v. Munroe,

210 N.J. 429, 442 (2012), the PCR judge correctly recognized the first <u>Slater</u> factor requires the court to consider whether the defendant "has asserted a colorable claim of innocence," which need not be a "'winning argument.'" However, the judge was persuaded that, unlike the defendants in those cases, defendant's accounts of the incident in the present matter varied among his statements. Citing <u>State v. Urbina</u>, 221 N.J. 509, 528 (2015), the judge recognized defendant "did not testify to any facts during the plea colloquy that suggested self-defense." Instead, his remarks were "offered in mitigation of what he had done" and "d[id] not rise to an assertion of justification."

Addressing the remaining <u>Slater</u> factors, the judge found on balance, defendant had not met the "manifest injustice" standard that would warrant withdrawal of his guilty plea. <u>See</u> <u>R.</u> 3:21-1 (requiring a sentenced defendant to demonstrate withdrawal of the guilty plea should be granted "to correct a manifest injustice").

Following a recitation of the familiar <u>Strickland/Fritz</u> test,[4] the PCR judge also rejected defendant's argument that plea counsel was ineffective for failing

---

[4] <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984) (holding a defendant seeking relief based on ineffective assistance grounds must demonstrate not only the particular manner in which counsel's performance was deficient, but also that the deficiency prejudiced the defendant's right to a fair trial); <u>see also</u> <u>State</u>

to pursue his self-defense claim. Referencing defendant's verified petition, the judge was convinced "he and plea counsel had discussed self-defense and plea counsel opined that he did not believe the defense would be successful." As the judge recognized, a successful self-defense claim "is more nuanced than simply who may have initiated the aggression." Because the record was fully developed, the judge denied defendant's request for a hearing. Persuaded defendant had not demonstrated his self-defense claim was likely to succeed, the judge determined defendant had not made a prima facie claim of ineffective assistance of counsel on that issue. Because counsel negotiated a favorable "downward adjustment of the charge and minimized [defendant's sentencing] exposure," the judge also was convinced defendant was not prejudiced by counsel's advice.

On November 10, 2020, the judge conducted a one-day evidentiary hearing on defendant's remaining claims. Plea counsel testified on behalf of the State. Defendant testified on his own behalf and presented the testimony of his mother, sister, and an immigration expert. The hearing focused on defendant's assertion that plea counsel "failed to recommend that [defendant] seek advice

---

v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland two-part test in New Jersey).

from an immigration attorney before entering the guilty plea" and "failed to seek an adjournment of the plea hearing to allow [defendant] to speak with immigration counsel, despite the fact that [defendant]'s answers on the plea form indicated his desire to do so."

The PCR judge considered defendant's answers to the trial court's questions during his plea allocution, including the following colloquy:

> TRIAL COURT: Do you understand there are going to be immigration consequences as a result of this [guilty plea]?
>
> DEFENDANT: Yes.
>
> TRIAL COURT: Have you had an opportunity to seek immigration counsel?
>
> DEFENDANT: Yes.
>
> TRIAL COURT: All right, I am not an immigration counsel, but I can tell you based on this offense, most likely you're going to be deported. When you're deported you will not be able to return to this country. You could be detained by ICE. You have a permanent resident card, which means you cannot become a citizen. You understand all those consequences?
>
> DEFENDANT: Yes.
>
> TRIAL COURT: Knowing that, do you still want to proceed today?
>
> DEFENDANT: Yes.

However, as the PCR judge recognized, defendant's answers to question 17 of the plea form, pertaining to the immigration consequences for non-citizens, "contain[ed] contradictory information regarding whether he had an opportunity to speak with an immigration attorney and/or desired the opportunity to do so." For example, defendant circled, "Yes" to question 17(c), "Do you understand that you have the right to seek individualized advice from an attorney about the effect your guilty plea will have on your immigration status?"; "No" to question 17(d), "Have you discussed with an attorney the potential immigration consequences of your plea?"; "Yes" to question 17(e), "Would you like the opportunity to do so?"; and "Yes" to question 17(f), "Having been advised of the possible immigration consequences and of your right to seek individualized legal advice on your immigration consequences, do you still wish to plead guilty?"

Not surprisingly, defendant's testimony at the hearing, and that of his family, was vastly different from that of plea counsel. Plea counsel testified he discussed the immigration consequences with defendant "right from the beginning." Counsel recommended a particular immigration attorney but told defendant he could retain anyone of his choosing. Defendant's consultation with an immigration lawyer "became a little more important" as plea negotiations

10

narrowed. Plea counsel acknowledged he was not versed in immigration law so, "it was very important that [defendant] speak to an immigration attorney before [they] agree[d] on any strategy to pursue."

Before defendant pled guilty, defendant told plea counsel he had a telephone conversation with the immigration attorney counsel had recommended, who said "based upon the . . . charge, and what he'd be pleading to that he should be okay with immigration; that he shouldn't . . . have to face deportation." Defendant assured plea counsel he was "comfortable" having spoken with immigration counsel and did not need to meet with him in person. After discussing defendant's sentencing exposure under the plea agreement versus a conviction at trial, defendant agreed to accept the State's offer.

Plea counsel explained the apparent inconsistencies between defendant's answers to question 17 on the plea form in contrast with his answers to the trial court's inquiry during the plea hearing. Plea counsel inferred question 17(d), whether defendant "discussed" the immigration consequences with counsel, meant defendant "actually met with an immigration attorney," rather than an "informal phone call," where defendant "didn't retain anyone professionally." Plea counsel answered "Yes" to question 17(e) to "leave open the option that if [defendant] had ever changed his mind and he did, in fact, want to formally

retain an immigration attorney to sit down and review this with him, that it would give him the option to do so."

On cross-examination, plea counsel denied informing defendant, or then girlfriend and current wife, that immigration consequences would depend on defendant's sentence. He also denied telling defendant, alone or in front of his family, defendant should leave the country for Spain. Rather, plea counsel testified he recalled defendant's mother asking about her son "leaving for Spain" after the plea hearing. Plea counsel found "that question a little bizarre." He told defendant's mother should her son return to Spain, "he can be sure he's never going to get back into this country again."

Defendant's mother countered after defendant's plea hearing, plea counsel said, "if he were [defendant], he would go to Spain; start a new life from zero." Defendant's wife claimed during pre-plea meetings, plea counsel advised "if the jail sentence was less than six months, [defendant] didn't have anything to worry about." She also testified during a post-plea meeting, plea counsel told defendant "he probably should just go to Spain." Defendant's immigration expert opined "removal from the United States is an immediate consequence that flows from [defendant's] charge and entering of a plea. Any amount of domestic

violence, per se, would have ICE at [defendant's] doorstep and see him out of the United States."

Defendant maintained his claim that plea counsel never recommended an immigration attorney. Despite defendant's "multiple" inquiries, plea counsel "never talked to [defendant] about being deported or anything like that." Yet, defendant testified plea counsel told defendant if he were sentenced to six months or less, he would not be deported. Defendant acknowledged no deportation proceedings of any kind had been instituted against him.

Following the submission of written summations, the judge issued a thoughtful written decision on February 12, 2021, denying relief. The judge thoroughly addressed the testimony adduced at the hearing in view of the plea colloquy and defendant's assertion that plea counsel "failed to recommend that [defendant] seek advice from an immigration attorney before entering the guilty plea" and "failed to seek an adjournment of the plea hearing to allow [defendant] to speak with immigration counsel, despite the fact that [defendant]'s answers on the plea form indicated his desire to do so."

The PCR judge credited plea counsel's testimony, finding his version of events was "consistent with [defendant's] testimony during the plea allocution." As to plea counsel's alleged advice to flee to Spain, the judge was convinced

plea counsel's testimony "[wa]s more reasonable and inherently more believable[,]" while the recollections of defendant and his witnesses "were inconsistent with one another."

The PCR judge reiterated her earlier decision, finding defendant met his burden under the first Strickland prong, because plea counsel failed to advise defendant, post-Padilla, that the plea offered by the State would certainly subject him to mandatory deportation. See Padilla v. Kentucky, 559 U.S. 356, 369 (2010). However, the judge concluded defendant failed to sustain his burden under the second Strickland prong because defendant did not assert he suffered any prejudice from plea counsel's failure to advise him that if he accepted the plea he would be immediately deportable. For example, defendant never claimed he would have risked a state prison sentence by going to trial, even with little chance of prevailing, had it afforded him the opportunity to avoid deportation. See Lee v. United States, 582 U.S. ___, ___, 137 S. Ct. 1958, 1968-69 (2017) (holding a petitioner with little chance of prevailing at trial can still establish prejudice from erroneous immigration advice leading to a guilty plea when deportation was the determinative issue for petitioner in plea negotiations). Because defendant "neither alleged in his verified petition nor testified during the evidentiary hearing that he would have rejected the plea had

A-2008-20

plea counsel properly advised him of the potential immigration consequences," the judge concluded defendant could not "satisfy the prejudice prong by showing 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" State v. O'Donnell, 435 N.J. Super. 351, 369-70 (App. Div. 2014) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

Similarly, the judge upheld her previous denial of defendant's motion to withdraw his guilty plea, finding defendant failed to allege that but for counsel's deficient immigration representation, he would not have pled guilty. See State v. O'Driscoll, 215 N.J. 461, 477 (2013) (explaining a "'plea will not be vacated if knowledge of the consequences would not have made any difference in the defendant's decision to plead'" (quoting State v. Howard, 110 N.J. 113, 123 (1988))). This appeal followed.

On appeal, defendant reprises the arguments asserted before the PCR judge, contending:

POINT I

DEFENDANT HAS BEEN PREJUDICED BY THE INEFFECTIVE ASSISTANCE RENDERED BY TRIAL COUNSEL.

THE PCR [COURT] ERRED IN CONCLUDING THAT DEFENDANT FAILED TO SATISFY, UNDER THE SECOND PRONG OF STRICKLAND, THAT HE WAS PREJUDICED BY COUNSEL'S PERFORMANCE WHICH THE COURT FOUND, UNDER THE FIRST PRONG OF STRICKLAND, TO HAVE BEEN DEFICIENT [AS TO THE IMMIGRATION CONSEQUENCES OF DEFENDANT'S GUILTY PLEA].

POINT III

THE [PCR] COURT . . . ERRED IN FAILING TO GRANT AN EVIDENTIARY HEARING AS TO THE ISSUE OF WHETHER OR NOT COUNSEL WAS INEFFECTIVE FOR FAILING TO PUR[SU]E A CLAIM OF SELF-DEFENSE.

POINT IV

THE [PCR] COURT ERRED IN DENYING DEFENDANT'S REQUEST TO WITHDRAW HIS GUILTY PLEA.

POINT V

DEFENDANT HAS BEEN PREJUDICED BY MISINFORMATION THAT MATERIALLY INFLUENCED HIS DECISION TO PLEAD GUILTY; ACCORDINGLY, THE [PCR] COURT . . . ERRED IN DENYING HIS REQUEST TO WITHDRAW HIS GUILTY PLEA.

Having considered defendant's contentions in view of the governing law, we conclude they lack sufficient merit to warrant further discussion in a written

16

A-2008-20

opinion, R. 2:11-3(e)(2), beyond the brief comments that follow. Pursuant to the applicable standards of review that govern the orders under review, we discern no reason to disturb the judge's decisions. See State v. Gideon, 244 N.J. 538, 551 (2021) (recognizing an appellate court reviews a PCR order following a hearing for an abuse of discretion); O'Donnell, 435 N.J. Super. at 373 ("[W]here the court does not hold an evidentiary hearing, we may exercise de novo review over the factual inferences the trial court has drawn from the documentary record."); see also State v. Simon, 161 N.J. 416, 444 (1999) (recognizing a plea withdrawal motion ordinarily is reviewed only for an abuse of discretion).

We affirm substantially for the reasons stated by Judge Carol Novey-Catuogno in her cogent written decisions. In doing so, we are satisfied defendant failed to demonstrate a reasonable likelihood his PCR claims would ultimately succeed on the merits and therefore failed to satisfy the Strickland/Fritz test as to both ineffective assistance of counsel claims. Moreover, because there was no prima facie showing of ineffective assistance of counsel on defendant's claim that counsel failed to pursue a self-defense claim, an evidentiary hearing was not necessary to resolve defendant's PCR claims.

Finally, we agree with the PCR judge that defendant failed to satisfy the Slater factors. Under the circumstances presented in this case – at the very least – defendant failed to demonstrate a colorable claim of innocence. As the judge found, defendant ultimately failed to demonstrate the force he employed exceeded what was necessary to defend himself against J.B. See Model Jury Charges (Criminal), "Justification - Self Defense, In Self Protection (N.J.S.A. 2C:3-4)" (rev. June 13, 2011). Accordingly, the facts essential to defendant's claim of innocence were neither "credible" nor "plausible." See Munroe, 210 N.J. at 440.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION